PEARL *v*. WHITEHOUSE.

P. furnished W. with money to pay for a piece of land, and took a deed
thereof in his own name, with the understanding that he would convey
the premises to W. upon being paid the amount of his advances with
interest, and for his trouble. Afterwards, at a general settlement of all
matters of dealing between the parties, P. claimed that he furnished the
money to make a certain payment of $300 on the land, which W. de-
nied. P. refused to convey the land except upon payment of said sum of
$300, and W., in order to get a deed, finally yielded to the claim, and
paid the sum demanded.

*Held*, that W. could not recover back the money paid under these circum-
stances, even though the sum in dispute was not in fact furnished by P.,
according to his claim.

ASSUMPSIT, by Ichabod Pearl against Samuel D. Whitehouse, for
rent of a tenement occupied by the defendant after January 1, 1869,
for which the jury found due to the plaintiff the sum of $43.50. The
only questions of law arise upon the defendant's set-off. The defend-
ant in his set-off claimed to be allowed for usurious interest paid by
him to the plaintiff; but the jury found for the plaintiff on that point.
The defendant also claimed to be allowed in set-off the sum of $300,
and interest thereon,—$101.28,—amounting to $401.28, which he
claimed that he paid or allowed to the plaintiff in a settlement made
January 1, 1869. The defendant claimed to recover this amount on
the ground that its payment or allowance by him in the settlement was
compulsory, and not on the ground of mistake. On this claim the
jury found due the defendant the sum of $469.95,—whereupon a gen-
eral verdict was rendered for the defendant for $426.45; and the same
is to be set aside, or judgment is to be rendered thereon, or judgment
is to be rendered for the plaintiff for $43.50, as the court shall order.
The defendant moved to set aside the verdict on the set-off as against
evidence. Before March, 1864, the defendant had conveyed a tract of
land in Somersworth to one Brown: the defendant's creditors had
caused executions to be levied on the land; and Brown had obtained
conveyances from the creditors, and acquired a perfect title in the land,
with the exception of a right of the defendant's daughter Fannie, for
which she demanded $300. The defendant, having received that sum
from Brown, paid it to her, and she conveyed her right to Brown about
March 11, 1864. At the defendant's request, the plaintiff took a deed
of the land from Brown, and furnished the money to pay Brown there-
for, the amount being sent in a draft to Brown by the plaintiff's
attorneys. The defendant testified that when the plaintiff agreed to
do this, he said all he should want would be the money back, and inter-
est, and pay for his trouble. The defendant testified that he and the

plaintiff understood that the plaintiff was to hold the land for the defendant, and to convey it to the defendant on the defendant's making him whole; that the defendant remained in possession of the land and made bricks thereon, the plaintiff furnishing the money to do the business. The plaintiff testified that he bought the land for himself, and that at the time he bought it there was no agreement or understanding, conditional or unconditional, that he would convey it to the defendant. There were various business transactions between the plaintiff and the defendant.

January 1, 1869, the plaintiff conveyed the land to the defendant, and nothing was then left unsettled between them. In that settlement the plaintiff claimed that, when the deed was obtained from Fannie to Brown, he had paid the defendant $300, to be paid to Fannie for the purpose of perfecting Brown's title, and enabling the plaintiff to obtain a perfect title from Brown. In the settlement, the defendant denied that he received the $300 of the plaintiff. The plaintiff refused to convey the land to the defendant unless the defendant would pay or allow the $300, and interest from March, 1864, to the settlement,— $101.28,—amounting to $401.28; and thereupon the defendant allowed and paid it, and the plaintiff conveyed the land to the defendant.

The defendant claims that that sum was extorted from him by the plaintiff's refusing to convey the land to him, and that the payment or allowance was for that reason compulsory.

The court, *pro forma*, instructed the jury that if the plaintiff did not pay the $300 to the defendant, as the plaintiff in the settlement claimed he had done; and if the money received by Brown from the plaintiff for the land was understood by the plaintiff and the defendant to be a loan from the plaintiff to the defendant; and if the plaintiff took the deed to himself upon an understanding with the defendant that he should hold the legal title for the defendant's benefit, and in trust for the defendant, and that the plaintiff should convey to the defendant, on being paid what he had paid and should pay on account of the land, and interest, and for his trouble; and if, at the settlement, the plaintiff, by refusing to convey the land according to this understanding, and by demanding said sum of $401.28 more than he was entitled to receive under said understanding, compelled the defendant to pay or allow that sum, the jury should allow to the defendant, on his set-off, that sum and interest to the date of the writ. To which instructions the plaintiff excepted.

This case was reserved, upon the plaintiff's motion.

*Wells & Eastman*, for the plaintiff.

There was a full and fair settlement of all matters between the parties, January 1, 1869. The defendant claimed that it was the understanding, when the plaintiff bought the land of Brown, that he would convey it to the defendant upon being made whole; that he said all he wanted would be his money back, and interest, and pay for his trouble.

The plaintiff denied this, and claimed that he bought the land for himself, and was under no obligation to convey it; that it was voluntary on his part whether to convey or not, and that he would not convey unless the $300 and interest was paid by the defendant. The $300 was also in controversy, the plaintiff claiming as a matter of right that he should receive it if he conveyed the land; that he advanced that sum before the $300 sent by Brown was received by the defendant,—and the defendant claiming that said sum was not advanced by the plaintiff, but was received from Brown at first. There was no fraud or mistake. The defendant had full knowledge of all the facts which he now has. He was to receive a substantial benefit from the conveyance of the land, and voluntarily allowed and paid the $300 in controversy. The parties having thus compromised and settled these disputed matters in controversy, the policy of the law and authority of adjudged cases are against disturbing this settlement. *Norton* v. *Marden*, 15 Me. 45; *Taylor* v. *Hare*, 4 B. & P. 262; *Marriott* v. *Hampton*, 2 Esp. 547; *Webber* v. *Aldrich*, 2 N. H. 461; *Rawson* v. *Porter*, 9 Me. 119; *Benson* v. *Monroe*, 7 Cush. 125; *Forbes v. Appleton*, 5 Cush. 115; *Bean* v. *Jones*, 8 N. H. 149. There was no duress or extortion. The plaintiff had no property of the defendant in his hands or possession to withhold. Brown had a perfect title in the land, and the defendant had no interest in it whatever. Brown conveyed this perfect title to the plaintiff, and the plaintiff paid Brown the entire purchase-money. The legal title in the land was in the plaintiff, and any agreement (if such was made) was a parol agreement to convey land, and within the statute of frauds.

The *pro forma* instructions of the court were incorrect. The cases of *Hall* v. *Shultz*, 4 Johns. 240, and *Gilpatrick* v. *Sayward*, 5 Greenl. 465, are conclusive for the plaintiff. In the New York case, a farm of Hall's, worth $8,000, was about to be sold on execution. Not having the money, Hall procured Shultz to purchase it for him, under the parol agreement that Hall should reconvey to Shultz upon refunding the purchase-money and interest, and a reasonable compensation for trouble. Shultz bought the farm for about $3,000, but refused to reconvey to Hall except he received the principal and interest, and the further sum of $300. Hall objected, but finally paid the money and took the conveyance, and brought a suit to recover the $300, as having been paid under compulsion; but the court, including KENT, C. J., held that he could not recover. In the Maine case, Gilpatrick made an agreement for the purchase of a farm, at the price of $1,200. He paid $600 cash of his own at the time, and procured Sayward, with two others to sign, as surety for him, a note for the balance to the grantor; and, for indemnity against their liability on this note, it was agreed that the deed should be made to the sureties alone, which was done. Afterwards they refused to give up the deed to Gilpatrick, on being discharged of their suretyship, without he paid them $50 each,— which he did, and brought assumpsit against Sayward for money had and received, and claimed to recover on the ground that the $50 was

obtained from him by extortion. But the court held that " the grantees were the legal owners of the land : they relinquished it for a stipulated sum, and this sum, received upon a legal consideration, they will be suffered to retain, notwithstanding they may have refused to perform a contract which the law does not enforce :" and the case of *Hall* v. *Shultz* is commented upon and sustained. Under any other view of the case, the motion to set aside the verdict, on the set-off, as against evidence, will be relied upon.

*Copeland,* for the defendant.

As no report of the evidence has been filed, the plaintiff's motion to set aside the verdict, on the set-off, as against evidence, is not properly before this court. The jury have, under the instructions of the court, found certain facts : those facts are no longer in controversy, having been settled by the jury ; and the only question remaining is, whether the instructions were correct.

As the defendant claimed to recover on the ground of compulsory payment, and not on the ground of mistake, nearly all of the authorities cited by the plaintiff have no application to compulsory payment, or to this case. In *Hall* v. *Shultz,* 4 Johns. 240, and *Gilpatrick* v. *Sayward,* 5 ·Greenl. 465, the plaintiffs failed because the agreement relied on was within the statute of frauds, and not because there had been a settlement. In this case, the facts, as found by the jury, show a resulting trust, which is not within the statute of frauds. Gen. Stats., ch. 121, sec. 13. A resulting trust arises as well where the consideration money of real estate conveyed to a trustee was loaned to the *cestui que trust,* as where it was his own money. 2 Washburn on Real Prop. 175 ; *Page* v. *Page,* 8 N. H. 187 ; *Dudley* v. *Bachelder,* 53 Me. 403. The trust arises where the money is loaned by the trustee himself to the *cestui que trust.* In *Boyd* v. *M'Lean,* 1 Johns. Ch. 583, where the "defendant loaned complainants the money with which the purchase was made, and took the conveyance as security for the loan," Chancellor KENT observes,—" the consideration of conveyance was moneys of the plaintiff, procured from the defendant as a loan, and the defendant took deed in his own name by agent, and thereby became trustee of the plaintiffs." In *Buck* v. *Pike,* 11 Me. (2 Fairfield) 9, WESTON, C. J., observes,—" Had Downs lent the money to Brewer to pay Meserve, and taken the deed in his own name for security, it would have been a payment of the purchase-money by Brewer, to whom a trust would have resulted." In this case, the money paid Brewer for the land was understood by the plaintiff and the defendant to be a loan from the plaintiff to the defendant, and that the plaintiff should convey upon payment, &c. Just such a case as within the principle of *Boyd* v. *McLean, Buck* v. *Pike, Page* v. *Page,* and *Dudley* v. *Bachelder, ante,* creates a resulting trust. In *Hall* v. *Shultz,* cited by the plaintiff, it was not claimed that money paid by the defendant was considered as a loan ;—and in that case the opinion of the court was not unanimous. In *Gilpatrick* v. *Sayward,* no money was

paid by the defendant, or loaned. ' In this case, the defendant contends that, the purchase-money being loaned by the plaintiff to the defendant, a resulting trust arose, and there was not, as in *Gilpatrick* v. *Sayward*, a contract which the law does not enforce, but a trust which arises from the loan and payment of money *(Moore* v. *Moore*, 38 N. H. 382), and not founded upon any contract. Such a trust imposed a legal as well as a moral obligation to convey, upon payment of such sums as the plaintiff was entitled to receive from the defendant for loans, advances, interest, &c. The jury found that such a loan existed,—found such facts ·as created a resulting trust between the parties,—and that (although he was morally and legally bound to convey upon payment of certain sums) the plaintiff refused to convey until the further sums of $300 and $101.28 interest thereon were paid, and thereby compelled the defendant to pay or allow that sum.

Under the instructions of the court, the jury, in order to find' for the defendant, must find that the defendant was compelled to pay the sum in controversy: they did so find. Then it follows that said payment was compulsory. Such a payment may be recovered back. " Money obtained by fraud, extortion, imposition, or duress, or taking any undue advantage of the situation·of a party, may be recovered back"— 2 Greenl. Ev. 121. Demanding illegal fees or claims—*Morgan* v. *Palmer*, 2 B. & C. 729 ; *Dew* v. *Parsons*, 1 Chitty 295 ; *Close* v. *Phipps*, 7 M. & G. 586 ; *Clinton* v. *Strong*, 9 Johns. 370. Where property or person was detained until money was paid—*Amesbury* v. *Amesbury*, 17 Mass. 461. Against a pawnbroker who detained pledge until more than was due was paid—*Astley* v. *Reynolds*, 2 Str. 915 ; *Tutt* v. *Ide*, 3 Blatch. C. C. 249 ; *Corkle* v. *Maxwell*, 3 Blatch. C. C. 413. Money paid to liberate raft of lumber (wrongfully claimed and paid)—*Chase* v. *Dwinal*, 7 Me. 135 (7 Greenl. 135). Money paid to release vessel from detention—1 Root 91. Money obtained by extortion, or taking an undue advantage—*Bliss* v. *Thompson*, 4 Mass. 488 ; *Goddard* v. *Bulow*, 1 N. & M. *45 ; *Mowatt* v. *Wright*, 1 Wend. 360 ; *Barnes* v. *Watson*, 1 C. C. 394. Money paid (upon a wrongful claim) to prove assignment of stock in an Insurance Co.—*Bates* v. *Ins. Co.*, 3 Johns. Cas. 238. A mortgagor, paying mortgagee who demands it more than is due to prevent foreclosure, may recover back excess—*Cazenove* v. *Cutler*, 4 Met. 246 ; see *Bennett* v. *Healey*, 6 Minn. 240 ; *Close* v. *Phipps*, 8 ·Scott (N. R.) 381. Money paid as the means of recovering possession of property to which the party is entitled, constitutes a compulsory payment, and may be recovered back—*Shaw* v. *Woodcock*, 9 D. & R. 889 ; 7 B. & C. 73 ; *Bevan* v. *Waters*, 3 C. & P. 520 ; *Cobb* v. *Charter*, 32 Conn. 358 ; see *Beckwith* v. *Frisbie*, 32 Vt. 559. ·A payment may be under circumstances involuntary, and an action brought to recover back the money, when the position or interest of the party is such as to require from another the performance of a duty enjoined by law, and he is illegally compelled to pay the money to induce such performance—*Baker* v. *Cincinnati*, 11 Ohio (N. S.) 534. Action 'maintained to recover money paid in excess of amount

due, to obtain lease to which the plaintiff was entitled—*Smith* v. *Sleap*, 12 M. & W. 585 ; see *Wakefield* v. *Newton*, 8 Jur. 735.

The plaintiff, by denying the trust and thus recovering money not due him, was guilty of fraud, and the money can be recovered back as fraudulently obtained.

LADD, J. The jury found—upon what evidence does not very well appear—that the money sent to Brown, in a draft, by the plaintiff's attorney to pay for the land, was loaned by the plaintiff to the defendant before it was so applied,—that is, that the land was paid for with the defendant's money,—and the deed made running to the plaintiff.

This being so, a resulting trust thereupon arose in favor of the defendant, so that at the time of the settlement he had a right to a conveyance of the land upon refunding the sum thus furnished, which a court of equity would have enforced.

Now, the most favorable view that can be taken for the defendant is, that the plaintiff's refusal to convey the land to him under these circumstances, gives him the same rights, as to the money paid to procure the conveyance, as though it had been paid to procure the surrender of goods belonging to him, which the plaintiff had in his possession and refused to give up except upon such payment. The case may be disposed of on this view.

The question arises on the *pro forma* instructions to the jury. But it will be well first to look at the facts as reported in the case, and see whether any foundation was laid for a recovery by the defendant upon the evidence. His position is, that, inasmuch as the $300 was not in fact advanced by the plaintiff, and was not due him at the time of the settlement, and inasmuch as the plaintiff refused to execute the deed unless that sum and interest were paid, he was therefore compelled to pay the money in order to get his land, and hence is entitled to recover it back on his set-off as so much money had and received by the plaintiff to his use.

The case shows that, in the settlement, the plaintiff claimed that he furnished the $300 to pay the defendant's daughter for her interest in the land ; and this the defendant then denied. At the trial, the position and claims of the parties were the same, and their testimony on this point was as conflicting as their claims. The case does not show that this claim of the plaintiff was made and insisted on in bad faith, and no evidence or facts are reported from which it is to be inferred that he did not then believe it to be well founded. So far as appears, it was a disputed matter, about which either party might have been honestly mistaken. All this goes very far to show that the payment was made voluntarily, with full knowledge of all the facts, by way of compromise ; and if this were so, the defendant cannot recover the money back. *Volenti non fit injuria.* *Bean* v. *Jones*, 8 N. H. 149 ; *Peterborough* v. *Lancaster*, 14 N. H. 382 ; *Evans* v. *Gale*, 17 N. H. 573 ; *Brisbane* v. *Dacres*, 5 Taunt. 143 ; *Bilbie* v. *Lumley*, 2 East 469 ; *Atlee* v. *Backhouse*, 3 M. & W. 633 ; *Longridge* v. *Dorville*, 5 B. & Ald. 117 ;

*Cook* v. *Wright,* 1 Best & Smith 559; *Callisher* v. *Bischoffsheim,* L. R. 5, Q. B. 449.

But the case shows further that the matter compromised was doubtful, and that the defendant received a benefit which he does not now propose to surrender. If the strict legal position of the parties be considered, it is obvious the first question at the settlement must have been, Was the plaintiff under obligation to convey the land at all? That depended, not upon any parol understanding or agreement of the parties,—for a trust in land could not be created in that way,—but upon whether the money paid to Brown had become the money of the defendant by loan, before it was handed over. All the evidence on that point may not be reported; but from what does appear,—namely, that the money went directly from the plaintiff, through his attorney, to Brown, and the absence of all evidence of any note or security for it from the defendant,—it is not improbable, to say the least, that a court of equity might have found the fact the other way, especially when it is remembered that parol evidence, to establish a resulting trust, ought always to be clear and conclusive. *Page* v. *Page,* 8 N. H. at p. 196; *Farrington* v. *Barr,* 36 N. H. 86; *Moore* v. *Moore,* 38 N. H. 382; Perry on Trusts, sec. 137, and cases cited. But however that might be, here is enough to show that a doubtful matter was compromised, without going into the inquiry at all whether the defendant's claim for the $300 was or was not well founded. The plaintiff, on the one hand, gave up his right to litigate the question whether he was legally bound to convey the land to the defendant on any terms; and the defendant, on the other hand, gave up his right to litigate the question, upon which they were directly at issue, with respect to the payment of the $300. It is not easy to see how this differs from the ordinary case of a voluntary payment, made with full knowledge of all the facts in the compromise of a disputed, and at the same time doubtful, matter; and I, for one, am not prepared to admit that there was any question for the jury, or that this money, when paid under the admitted facts of the case, did not become the money of the plaintiff. If it did become his money, there is nothing unconscientious in his retaining it. See cases collected in notes to *Marriott* v. *Hampton,* 2 Sm. Ld. Cas., 6th Am. ed., 453. Upon this view, the exception to the *pro forma* instruction on this branch of the case should be sustained, on the ground that it was not called for or warranted by the evidence.

But, if it be said that other evidence may have been introduced at the trial, and that the question whether the payment was voluntary was open for the jury upon all the facts, we are then to inquire whether the terms in which it was left to the jury were correct. The instruction was, "that if the plaintiff did not pay the $300 to the defendant, as the plaintiff in the settlement claimed he had done; and if the money received by Brown from the plaintiff for the land was understood by the plaintiff and the defendant to be a loan from the plaintiff to the defendant; and if the plaintiff took the deed to himself upon an understanding with the defendant that he should hold the legal title

for the defendant's benefit, and in trust for the defendant, and that the plaintiff should convey to the defendant, on being paid what he had paid or should pay on account of the land, and interest, and for his trouble; and if, at the settlement, the plaintiff, by refusing to convey the land according to this understanding, and by demanding said sum of $401.28 more than he was entitled to receive under said understanding, compelled the defendant to pay or allow that sum, the jury should allow to the defendant, on his set-off, that sum and interest."

It is necessary to examine this instruction with some care, and see what part of it relates to the point we are considering,—that is, whether the payment was voluntary. The fact that the money paid to Brown was understood to be a loan from the plaintiff to the defendant, had relation wholly to the right of the defendant to have a conveyance of the land in the outset, as we have seen. The understanding, as to holding the title in trust for the defendant, was incompetent to show a trust; and had it been competent, it imposed no greater obligation than that arising upon the trust created by operation of law—a matter entirely foreign to the inquiry whether the payment was voluntary or not. Laying these parts of the charge one side, what remains? Simply this : if the plaintiff did not pay or furnish the $300, and on the settlement compelled the defendant to pay that sum by refusing to deed unless he did so, the defendant may recover it back in this suit.

What disputed question of fact was thus submitted to the jury? I see none except this : Did the plaintiff pay the $300, as claimed by him at the settlement? Was the plaintiff right, or was the defendant right, in regard to that transaction? It is true, the jury were directed to say whether, by such refusal, the defendant was compelled to pay. But what additional fact were they thereby to pass upon? That the plaintiff refused to convey unless the defendant yielded to his claim as to the $300 was not in controversy. It was admitted on all hands that, in order to get the land in the way he did, that is, by a voluntary deed from the plaintiff, the defendant was obliged to pay the $300. There is nothing in the case to show any other compulsion than this, and the instruction calls for no other. The requirement of this part of the instruction would be met if the jury found,—what was not disputed,—that the plaintiff refused to convey unless the $300 were paid. It seems to be capable of no other construction, and the jury must have so understood it. The whole, therefore, comes to this : the defendant is entitled to recover back the $300 if the jury are satisfied of two things,—first, that the plaintiff refused to deed unless he paid it, which was not in dispute; and, second, that the plaintiff did not furnish the money as he claimed he did.

Suppose, now, the plaintiff, at the settlement, honestly believed his claim to be well founded ; and, further, suppose that, for the sake of having an end of dispute, he yielded some other point of equal value to a claim of the defendant, which he believed to be unfounded, which was in fact unfounded, and which the defendant at the time knew to be unfounded : would it not still be true that he did not furnish or pay

this $300, and true also that he did refuse to convey unless that sum were paid him? This is plain. The call of the instructions would undoubtedly be met; yet who would pretend that under such a state of facts the defendant could recover back the money?

The great fault with the instructions is, they do not go far enough. They do not point out or require any specific fact or circumstance of compulsion, or fraud, or extortion, or undue advantage, which brings the case within any known principle of law. To repeat: a voluntary payment, made by the defendant with full knowledge of all the facts, in the compromise of a disputed and doubtful matter, whereby he gains a substantial and equal advantage which he still retains, if insisted on by the plaintiff as a condition of making the deed, would furnish, according to the doctrine here laid down, a sufficient basis for recovering back the money so paid in an action for money had and received. Such a doctrine, of course, cannot be sustained. The verdict must therefore be set aside, and

*A new trial granted.*